**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT**,<br><br>*Plaintiff*,<br><br>v.<br><br>**ZTE CORPORATION, ZTE (USA) INC. AND ZTE (TX), INC.**,<br><br>*Defendants*. | C.A. NO. 6:20-cv-00489-ADA<br>C.A. NO. 6:20-cv-00492-ADA<br>C.A. NO. 6:20-cv-00495-ADA |

**DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................1

II. U.S. PATENT NO. 7,487,240 (CASE NO. 6:20-CV-00489-ADA) ...................................1

    A. Disputed Term 5: "the connectivity verification result(s) associated with the alarm" (Claims 1, 6, and 13) ...............................................................................1

III. U.S. PATENT NO. 8,147,071 (CASE NO. 6:20-CV-00492-ADA) ...................................3

    A. Disputed Term 5: "a movement sensor configured to detect movement of the apparatus and/or a projector" (Claim 9)................................................................3

IV. U.S. PATENT NO. 9,258,232 (CASE NO. 6:20-CV-00495-ADA) ...................................4

    A. Disputed Term 5: "instructions for receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the back pressure signal indicates a period of congestion" (Claim 14)..................................................4

        1. The Term is Governed by § 112(f) as Means-Plus-Function ......................4

        2. The Limitations are Governed by 35 U.S.C. § 112(f) and Fails to Provide Support for the Claimed Function ...................................................6

V. CONCLUSION....................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cypress Lake Software, Inc. v. Samsung Electronics America, Inc.*,
   382 F. Supp. 3d 586 (E.D. Tex. May 10, 2019) ...................................................................5, 6

*Nautilus Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) .................................................................................................................2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................................2, 3

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339, 1350 (Fed. Cir. 2015) ......................................................................................5

Pursuant to the Court's First Amended Scheduling Order (Dkt. No. 45),[1] the Court's February 26, 2021 e-mail order, and the Court's April 18, 2021 e-mail order, Defendants ZTE Corporation, ZTE (USA) Inc., and ZTE (TX), Inc. (collectively "ZTE") hereby submits the following supplemental claim construction brief.

## I.   Introduction[2]

Three supplemental terms are briefed herein, one from each of U.S. Patent Nos. 7,487,240; 8,147,071; and 9,258,232. None of these three patents share a common specification, and each is directed towards different technology. *See also* Dkt. 67.

## II.   U.S. Patent No. 7,487,240 (Case No. 6:20-cv-00489-ADA)

### A.   Disputed Term 5: "the connectivity verification result(s) associated with the alarm" (Claims 1, 6, and 13)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

The claimed "connectivity verification result(s) associated with the alarm" is insolubly ambiguous and has no ascertainable meaning. Under the *Phillips* standard, the analysis begins with the claim terms. Here, the claims fail to provide any meaning to what "connectivity verification result(s) *associated with the alarm*" means. (Emphasis added). The claims provide no explanation of what it means for "the connectivity verification result(s)" to be "associated with the alarm" and nothing to differentiate "connectivity verification result(s) that are not "associated with the alarm." In fact, without any definition of what being "associated" means—much less what "associated" means with the alarm—it is impossible to determine what it means to "identify Layer-

---

[1] There are 11 pending cases.  Citations throughout refer to new WDTX Case Nos. -00487 through -00497, and specific citations reference to the docket for WDTX Case No. -00489.
[2] ZTE hereby incorporates the Legal Standards section from Defendants' Claim Construction response brief. *See* Dkt. 67, pp. 2-3.

2 and Layer-3 objects within the containment hierarchy affected by the connectivity verification results associated with the alarm." Specifically, it is impossible to determine what it means for the containment hierarchy to be "affected by the connectivity verification results," because nothing defines the "associated" term, nor how the connectivity verification results are "associated" with the alarm. As shown below, exemplary claim 1 contains no information for what it means for connectivity verification results to be "associated with the alarm."

> 1. A network management connectivity verification framework comprising:
> a connectivity verification server to perform unattended connectivity verification jobs; and
> a connectivity verification application to:
> > define connectivity verification jobs capable of verifying connectivity in the network relating to at least Layer-2 and Layer-3 objects within a given containment hierarchy for the network,
> > control the connectivity verification server to perform the defined connectivity verification jobs, wherein the performing generates at least one of connectivity verification results,
> > display the connectivity verification results,
> > receive a user-input specification of a connectivity verification threshold,
> > compare the connectivity verification results to the specified connectivity verification threshold,
> > generate an alarm when the comparison shows that at least one of the connectivity verification results has reached the specified connectivity verification threshold,
> > identify Layer-2 and Layer-3 objects within the containment hierarchy affected by ***the connectivity verification results associated with the alarm***, and display the identified Layer-2 and Layer-3 objects.

Next, we look to the specification, but this term is not used in the specification at any point. *See* the '240 patent. The specification recites where the "connectivity verification results, including alarm information, are further used to generate a network map displaying selected connectivity verification results." *Id.*, 6:43-46. Nothing in this recitation, however, provides what it means for connectivity verification results to be "associated with the alarm." And, the claims do not contain this limitation—that the connectivity verification results "include alarm information"—and thus, it would be error to read this limitation into the claims. The specification also recites "[t]he

2

connectivity verification application 502 uses the connectivity verification results and alarm information to display 640 and highlight Layer-2 (506) and Layer-3 (504) objects affected by the alarm." *Id.*, 9:37-41. And likewise, this recitation also does not provide what it means for the connectivity verification results to be "associated with the alarm."

Finally, we turn to the prosecution history. The subject "alarm" term was first introduced in an amendment four years after the application was filed, and was introduced in response to a third office action. Dkt. 67, Ex. 10, '240 Prosecution History at 272-288. At the time, in order to traverse a 35 U.S.C. 112(b) rejection, Applicant stated that "reading the as-examined claims 1 and 6, in their entirety, a person of ordinary skill in the art would clearly understand the alarm to be generated as a result of the recited connectivity thresholds not being met." *Id.* at 281. Applicant's statement, however, does not clarify what it means for "the connectivity verification result(s)" to be "associated with the alarm." Even if it did, this statement cannot be relied on because it contradicts exemplary claim 1 that recites to "generate an alarm when the comparison shows that at least one of the connectivity verification results ***has reached*** the specified connectivity verification threshold." Claim 1 (emphasis added). Because the claim and the specification fail to inform with reasonable certainty what "the connectivity verification results associated with the alarm" is, this term is indefinite. *Nautilus*, 572 U.S. 898 at 910.

### III.    U.S. Patent No. 8,147,071 (Case No. 6:20-cv-00492-ADA)

**A.    Disputed Term 5: "a movement sensor configured to detect movement of the apparatus and/or a projector" (Claim 9)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

The term "a movement sensor configured to detect movement of the apparatus and/or a projector" is indefinite because the claims fail to distinctly point out what is being claimed. Claim

3

9 fails to recite whether it claims "a movement sensor configured to detect movement of the apparatus and a projector" or "a movement sensor configured to detect movement of the apparatus or a projector." This is ambiguous because the claim's use of the phrase "and/or" could be interpreted to mean both of these terms equally. But, this limitation is critical for the claim because it is impossible for a PHOSITA to ascertain whether the claimed "movement sensor" is configured to detect movement of both the claimed "apparatus and a projector" or if it is configured to detect movement of the claimed "apparatus or a projector." Without any further information in the claim, the claim term is ambiguous.

The specification provides a recitation of the same claim language used in claim 9. The '071 patent, 2:62-67 recites: "a move-ment sensor configured to detect movement of the apparatus and/or a projector.". The '071 patent, 2:62-67. However, the same recitation does not resolve the ambiguity, and nothing in the remainder of the specification resolves this ambiguity.

### IV. U.S. Patent No. 9,258,232 (Case No. 6:20-cv-00495-ADA)

#### A. Disputed Term 5: "instructions for receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the back pressure signal indicates a period of congestion" (Claim 14)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Governed by 35 U.S.C. § 112(f) <br><br>**Function:** receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the back pressure signal indicates a period of congestion <br><br>Indefinite under 35 U.S.C. § 112(b); <br><br>**Structure:** none disclosed. |

#### 1. The Term is Governed by § 112(f) as Means-Plus-Function

This term should be construed under 35 U.S.C. § 112 (f) because the term "instructions" is a nonce word that recites no structure by itself. Indeed, "[g]eneric terms such as 'mechanism,'

4

'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (citing *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed.Cir.2006); M.P.E.P. § 2181). The term "instruction" merely means an order and carries the same breadth of other nonce words, such as "means," "device," "module," or similar terms, that reflect nothing more than verbal constructs. The term "instruction" denotes no structure. Like the term 'module" found to be a nonce word in *Williamson*, "instructions" is nothing more than "a generic description for software or hardware that performs a specified function." *Id.* No structure is indicated by use of the term "instructions," demonstrated by the lack of difference in claim language if the term "instructions" in claim 14 is replaced by the term "means" or "module." *Id.*

WSOU apparently construes "instructions" as "code," or "program code," Dkt. 60, WSOU Opening Brief, pp. 18-19, although the words are not synonymous. The term "instructions" is a broader term because code is text using the protocol of a particular computer language whereas "instructions" are orders. Although code is generally thought to be a series of instructions, instructions are not necessarily code.

As shown below, claim 14 includes only a bare recital of "instructions for" four times in repetition, indicating the use of a means-plus-function recitation. *Cypress Lake Software, Inc. v. Samsung Electronics America, Inc.*, 382 F. Supp. 3d 586, 614 (E.D. Tex. May 10, 2019).

> 14. A non-transitory machine-readable storage medium encoded with **instructions for** execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link, the non-transitory machine-readable storage medium comprising:
>   **instructions for** receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the backpressure signal indicates a period of congestion;

> **instructions for** determining, by the controller of the traffic flow control system, at least one weighting factor to be applied to the flow of data packets based on the received backpressure signal; and
>
> **instructions for** adjusting an amount of rate limiting applied to at least a portion of the flow of data packets based on both the determined at least one weighting factor and a content of the backpressure.

(emphasis added).

Nothing in the claim provides further structure for the term "instructions," and the recital of this term is not a specific structure for reciting the claimed function because it is repeated four times. Instead, the structure for the term "instructions" here is generic, and it must be to accommodate each of the four different functions recited in claim 14. The term "instructions" is merely a placeholder word, or a nonce word. Further, the specification provides no structural meaning for "instructions for" or to distinguish the "instructions" recited here from generic software. In a similar situation, courts have applied means-plus-function. *Cypress Lake Software*, 382 F. Supp. 3d at 614 (finding that recitations of "code for" is governed by 35 U.S.C. 112 (f)).

### 2. The Limitations are Governed by 35 U.S.C. § 112(f) and Fails to Provide Support for the Claimed Function

Because the limitations are governed by 35 U.S.C. § 112(f), the specification must disclose a clearly linked function. It does not. *See generally*, the '232 patent. Potential structural terms "code," "program," "instructions," "computer," "orders," and "interface" are not recited or discussed in the specification. Thus, nothing links the recited "instructions" to any structure. Further, no algorithms or any other discussion of these terms is in the specification to shine light on a clearly linked function. The specification even fails to address any sort of "machine-readable storage medium" on which claim 14 recites that the instructions are stored. Thus, no structure is recited in the specification, and no structure with clearly linked functions is recited. Thus, this term is invalid for indefiniteness as it fails to inform with reasonable certainty what is claimed. *Nautilus*, 572 U.S. 898 at 910. Accordingly, the claim terms are indefinite.

## V. CONCLUSION

For the foregoing reasons, Defendants request that the Court adopt Defendants' proposed constructions.

DATED:  April 23, 2021                             Respectfully submitted,

                */s/Lionel M. Lavenue*
                Lionel M. Lavenue
                Virginia Bar No. 49,005
                lionel.lavenue@finnegan.com
                **FINNEGAN, HENDERSON, FARABOW,**
                **GARRETT & DUNNER, LLP**
                1875 Explorer Street, Suite 800
                Reston, VA 20190
                 Phone:  (571) 203-2700
                 Fax:     (202) 408-4400

                **ATTORNEY FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 23, 2021.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
