**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00487-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00488-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00489-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00490-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00491-ADA** |
| **v.** | § | **CIVIL ACTION 6:20-cv-00492-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00493-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00494-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00495-ADA** |
| **ZTE CORPORATION, ZTE (USA)** | § | **CIVIL ACTION 6:20-cv-00496-ADA** |
| **INC, AND ZTE (TX), INC.,** | § | **CIVIL ACTION 6:20-cv-00497-ADA** |
| *Defendants.* | | |

## MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

**TO THE HONORABLE COURT:**

Plaintiff WSOU moves for entry of a disputed protective order. While the parties have reached agreement on most items, certain disputes remain. Each parties' respective positions are below. A proposed protective order with the disputes highlighted is attached as Appendix A.

### Plaintiff WSOU's Position

There are six principally disputed issues in the protective order:

(1) Access by Outside Counsel and their Staff (Sections 5(a) and (b))

(2) Resolution of Disputes for Disclosed Experts (Section 5(e)

(3) Definition of Source Code (Section 8)

(4) Source Code Handling (Section 11)

(5) Prosecution Bar (Section 12)

(6) Retaining Information Required by Law as Opposed to Destroying (Section 23)

WSOU sought to avoid a dispute and Court involvement by proposing language that ***opposing*** parties had recently agreed to in negotiations.[1] In particular, in the meet and confer between the parties on April 21, 2021, WSOU pointed ZTE to the just-entered WDTX protective order between WSOU and Microsoft in their 12 cases, namely the ***agreed*** language the parties submitted to the Court (hereinafter the WSOU-Microsoft Agreed Language). *See* e.g., *WSOU Investments LLC v. Microsoft Corporation*, Case No. 6:20-cv-454, Dkt. 68 (WDTX March 29, 2021) (Joint Motion), which the Court subsequently entered at Dkt. 71 (WDTX March 30, 2021) (Order granting protective order; the identical order was entered in Case Nos. -454 through -465). WSOU did not come up with this language on its own; rather, it was part of a negotiated process. The WSOU-Microsoft Agreed Language was presented as an example of how reasonable parties working with one another could agree. There is nothing controversial about the WSOU-Microsoft Agreed Language, and, most of the proposed language is typical in agreed protective orders.

ZTE was unable to present any actual problems it had concerning the WSOU-Microsoft Agreed Language – other than principally objecting to any deviation from the Court's "Sample Protective Order." This was despite the fact that ZTE also had its own deviations from the Court's Sample Protective Order.

## I.   Plaintiff's Position – Section Sections 5 (a) and (b) – Access by Outside Counsel and their Staff

WSOU's proposal for sections 5(a) and 5(b) is identical to the WSOU-Microsoft Agreed Language. *See* 6:20-cv-454, Dkt. 71 at 4 (referencing the same section numbers).

The proposal in section (b) corrects a practical problem that arises from the phrase "Employee of [outside counsel of record in section (a)]," which ZTE proposes. Rather than being an ***employee*** of an actual counsel or record (an individual), attorneys, paralegal, and staff are

---

[1] If history repeats itself, ZTE will engage in *ad hominem* attacks as opposed to addressing the merits of the issues before the Court. WSOU's refusal to engage with ZTE in such ancillary attacks should not be interpreted as WSOU agreeing with anything ZTE says. Rather, WSOU chooses to focus on the issues.

usually employed by a *firm* – an entity.  This is true even in situations involving partnerships. Also, the term "employee" connotes a particular *type* of relationship, which could exclude attorneys in an "of-counsel" role or partners who choose to have their pay flow through a corporation – as opposed to being an "employee" of the firm in which they (or their corporation) are a party. Both WSOU and Microsoft agreed to the language now presented to correct these problems; ZTE refuses such language.

WSOU identified for ZTE the consequences of the language it proposes.  Presently, only one attorney has appeared for ZTE. Yet, multiple ZTE attorneys have been involved in these cases. WSOU has already disclosed confidential information. Unless those other ZTE attorneys (and staff) are "[e]mployees of [the single attorney that has appeared]" as proposed by ZTE, they will be unable to review designated material.

The proposal in Section (a) also corrects a similar problem to allow "outside counsel retained for purpose of this litigation" to review material *before* they appear.  This would include, for example, trial counsel and appellate counsel. It would also cover other outside attorneys at the same firm (as counsel of record) who have been retained but have not yet appeared. When addressing disputes such as this, Courts often had no problems with additional counsel reviewing protected material – providing they agreed to be bound by the protective order. In particular, in another case in the EDTX where Finnegan (ZTE's counsel) was representing another party, Finnegan fought to gain access for IPR counsel – despite the fact that such counsel had not made an appearance.  Judge Gilstrap ruled that confidential information could be shared with Finnegan attorneys – providing the following:

> "*if and as soon as* **[IPR counsel - Finnegan] files a notice with this Court certifying**
> **(1) that it is or reasonably expects to be counsel of record for [Defendant] in a**
> **Related Proceeding as defined by the Protective Order1 and (2) that Finnegan, Finnegan's attorneys, and Finnegan's employees will strictly comply with all of the provisions of the Protective Order in this case and this Order.**"

*Luminati Networks, Ltd. v. Bi Science, Inc. et al*. Case No. 2:18-cv-483-JRG (E.D. Tex) (Dkt. 81) (April 24, 2019). The WSOU-Microsoft Agreed language simply reflects this reality. And, WSOU has noted that any such counsel would need to be comply with all provisions of the protective order. Again, both WSOU and Microsoft agreed to the language now presented to correct these problems; ZTE refuses such language.

ZTE's only reasons for objecting to the WSOU-Microsoft Agreed language is (1) it is not the Court's Sample Protective Order, and (2) an argument that "employees" refer to the employees of the firm – not the actual counsel. As to the first objection, parties often deviate – just like ZTE chose to do multiple times in the present protective order. Here, the deviation corrects an issue recognized by WSOU and Microsoft. As to second objection, WSOU disagrees as to ZTE's interpretation, which is contrary to the plain language. The above-quoted Gilstrap opinion even notes a difference between the firm, its attorneys, and its employees.

## II.   Resolution of Disputes – Section 5(e)

For Section 5(e), WSOU agreed to ZTE's request to deviate from the Court's Sample Protective Order. In particular, ZTE requested that parties supply *less* information about a potential expert than required by Court's Sample Protective Order. However, ZTE refused to agree to WSOU's request for a quick resolution of disputes concerning experts – if one arises – in Section 5(c).

WSOU again borrowed from the WSOU-Microsoft Agreed language to attempt to avoid disputes. *See* 6:20-cv-454, Dkt. 71 at 5 (referencing the section (e)). The timeline for resolution is identical to the WSOU/Microsoft's timelines (7 days before access and 3 days for a prompt meet and confer) – except that WSOU agreed to 7 days for a motion instead of 3 (as agreed with Microsoft) in attempts to move closer to ZTE's proposal of 15 days. ZTE has provided no reason why it believes the quick resolution schedule is inappropriate or unworkable. And, ZTE has

entered into protective orders similar timelines as those proposed by ZTE.[2]  Given ZTE's request to **reduce** the amount of information required in disclosing an expert, it also makes sense to **reduce** the timeline for resolving disputes – as done in the WSOU-Microsoft Agreed language.  If there truly is an objection, the parties should quickly work to resolve it.

Also, there should be nothing objectionable about a party disclosing materials to a proposed expert after the time period has expired (in the last portion of Section 5(e)).

## III.      Definition of Source Code – Section 8

WSOU sought to fend off future disputes by providing the typical definition of "source code" used by parties – "a text listing of computer instructions, commands, and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator."  This is in the definition for the WSOU-Microsoft Agreed language (See 6:20-cv-454, Dkt. 71 at 6 (referencing the same), and parties have routinely used it.[3]

Such listing should not be surprising – since it echoes dictionary definitions near verbatim.

---

[2] See Agis Software Development, LLC v. Huawei, Inc. et al, Case No. 2:17-cv-517-JRG (Lead Case)(E.D. Tex.)(Apr. 9, 2018) ("Within seven (7) days of the disclosure . . . the producing Party may notify the receiving Party in the writing that it objects to disclosure of Protective Material.")("If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court with ten (10) days of the notice . . . ").

[3] See e.g., Kojicast, LLC v. Dailymotion S.A., Case No. 2:18-cv-146 (E.D. Tex.)(Aug. 30, 2018)(" computer source code (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator) to be compiled or assembled into an executable computer program . . . "). Uniloc USA, Inc. et al. v. HTC America, Inc.  Case No. 2:17-cv-1558 (W.D. Was.)(Jul. 18, 2018) (""Source Code" means a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator to be compiled or assembled into an executable computer program."); 13 Cases: Uniloc 2017, LLC v. Google LLC, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("computer source code (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator). . . ");  5 Cases:  Uniloc 2017, LLC v. Google LLC, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "computer source code (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator). . . "); PayRange Inc. v. Kiosoft Technologies, LLC et al ((S.D. Fl,)(Oct. 13, 2020)("Source Code is defined in the Protective Order to mean the Parties' alphanumeric text listing commands that the Parties compile and assemble to develop the Parties' proprietary software-based products.").



WSOU is concerned that absent such a typically used definition, non-source code will be characterized as source code – requiring Court resolution down the road.

## IV.    Plaintiff's Position – Section 11, Source Code Handling

Again, having already been through protective order negotiations with a sophisticated party (Microsoft), WSOU simply proposed the WSOU-Microsoft Agreed Language.  *See* 6:20-cv-454, Dkt. 71 at 7-11 (referencing Section 10).  These proposals are reasonable.

### a.    Three computers across the cases with computers located in "Austin, Dallas, or otherwise agreed"- Section 11(a)

Rather than have one individual computer per case (or 12 computers), WSOU agreed to a reasonable three computers across cases using the WSOU-Microsoft Agreed Language.  This set-up has worked well for the ongoing source code review in the cases between WSOU and Microsoft. The only deviation from the WSOU-Microsoft Agreed Language is that WSOU ***also*** agreed to have the source code produced in either Austin ***or Dallas*** – given ZTE's deponents declaration that such source code is at the location of outside counsel's office in Dallas.  *See* e.g., Case No.

6:20-cv-487 (Declaration of ZTE USA representative Ray Wood at ¶12: "technical documents and source code are stored at the Upshaw PLLC law firm in Dallas County, Texas." This Court has previously ordered other parties to produce its code in Austin.  See e.g., *WSOU v. Microsoft*, Case No. 6:20-cv-00454, ECF No. 42 ("The Court will have the source code made available in Austin.") ZTE rejected this language because such language was in the Sample Protective Order. Yet ZTE has not explained why such language is unreasonable.

      **b.**      **Minimum Display Screen Size of Seventeen-Inches – Section 11(a)**

There is nothing remarkable about WSOU's requests that the display screen or monitor be at least seventeen inches.  This prevents ZTE from providing an unreasonably small screen size of, for example, thirteen inches (or even smaller).  Parties routinely agree to such screen sizes. That's why it was included in the WSOU-Microsoft Agreed Language. ZTE has not explained why it refuses to agree – other than repeating that it is not in the Sample Protective Order.

      **c.**      **Analysis Tools – Section 11(a)**

Parties often typically include clauses addressing analysis tools. ZTE refused to include such a clause.  WSOU proposed the identical clause from the WSOU-Microsoft Agreed Language. Absent such a clause, Court intervention will be required should ZTE refuse to place analysis tools on the source code computer.

      **d.**      **Provision for Handling in Light of COVID-19 or Other Emergencies – Section 11(a)**

Given the effects of COVID-19, parties have also often typically included clauses addressing an agreement to work in good faith when emergencies such as COVID-19 arise.  ZTE refused to include such a clause or explain why it objects (other than it not being in the Sample Protective Order).  WSOU proposed the identical clause from the WSOU-Microsoft Agreed Language. There should be nothing controversial about WSOU's requested clause.

      **e.**      **Clarifying Language – "Direct Reports" vs. "Staff" – Footnote 3 for Section 11(a)**

Like in other areas of the protective order (and in hopes of avoiding disputes), WSOU proposed language from the WSOU-Microsoft Agreed Language, namely using the term "staff," which Microsoft and WSOU agreed was clearer than the term "direct reports," which can be ambiguous. ZTE identified no problems with using the term "staff" as opposed to "direct reports" but refused because it was not in the Sample Protective Order.

**f.      The Number of Pages of Source Code Printout – Section 11(h)**

The Court's Sample Protective Order does not include a default number of printouts for Source Code. To avoid a dispute down the road as to whether a requested amount is reasonable, WSOU proposed the amount ordered by the Court in resolving one of the few disputes between WSOU and Microsoft – 1,000 pages for each software release. *See* 6:20-cv-454, Dkt. 71 at 10. WSOU believes the Court's resolution of such a dispute between WSOU and Microsoft is, also, appropriate for the cases between WSOU and ZTE. ZTE, again, objects because it is not the Court's Sample Protective Order.

**f.      Source Code Handling at Depositions and Court Proceedings – Section 11(k)**

Given the ongoing concerns with COVID-19 and the reality that depositions and hearings are occurring remotely, WSOU has proposed language that would allow communications of Source Code Material to occur, for example, via Zoom (or other technology) during a remote hearing with the Court or at a remote deposition. The WSOU-Microsoft Agreed Language allowed the ability for Source Code Material to be transmitted electronically via a deposition or at a hearing. ZTE's proposal, which is not in the Court's Sample Protective Order, ensures the ***inability*** to reference Source Code Material at such a remote deposition or at hearing – via Zoom or otherwise. Certainly, ZTE could not argue that its source is more sensitive than Microsoft's.

**V.      Prosecution Bar – Section 12**

**a.      The Bar Should Not Apply Those Who Don't Actually "Access" Materials and Financial Information (Other than Technical Information)**

WSOU proposed often-used language concerning when a prosecution bar attaches, namely (1) when an individual *actually* obtains information (as opposed to only having "access to" it) and (2) when an individual obtains "technical information" as opposed to "financial data." Counsel has "access to" designated material when they make an appearance – even if they never access or otherwise learn about designated material. Attaching a prosecution bar in such circumstances is non-sensical. There is no harm. Likewise, there is no risk of harm coming from one who only looks at financial information and not technical information relevant to the case. Under ZTE's proposal, the prosecution bar would attach to a financial consultant who had access to, but never looked at, any confidential sales numbers in a case.

There is nothing controversial about WSOU's proposal. It is identical word-for -word to the WSOU-Microsoft agreed language. Other parties have also recognized this common-sense approach – including parties such as Google, Apple, and Huawei.[4] And, ZTE requested entry of a protective order having near-identical language.[5]

### b.    Alternative Time Language

WSOU also proposed often-used language in prosecution bars concerning an alternative time period when a prosecution bar should no longer apply to a person – "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL." This language

---

[4] *See* e.g., *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL . . . "); 5 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL . . . "); *Agis Software Development, LLC v. Apple, Inc.*, Case No. 2:17-cv-516-JRG (E.D. Tex.)(Oct. 26, 2017) ("who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature under this Order.");
[5] *See Agis Software Development, LLC v. Huawei, Inc. et al*, Case No. 2:17-cv-517-JRG (Lead Case)(E.D. Tex.)(Apr. 9, 2018) ("who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature under this Order.").

reflects the simple fact that memories fade over time and that the principal expiration clause, which is tied to the case ending (including the appeals), can go on for years. WSOU's proposal is identical word-for-word to the WSOU- Microsoft Agreed Language. And, this same language has either been agreed to by parties or used by Courts in at least the following cases:

- <u>13 Cases</u>: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- <u>5 Cases</u>:  *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . .")
- *Kojicast, LLC v. Funimation Productions, LLC*, Case Nos. 2:19-cv-132 (E.D. Tex.)(Jul. 19, 2019)("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Keurig, Incorporated v. Sturm Foods, Inc.*, Case No. 10-841-SLR-MPT (D. Del.)(July 6, 2001)("two years after that person's last review of the Designated Material")
- *Uniloc 2017, LLC v. Kaspersky Lab, Inc.*, Case No. 2:19-cv-219-JRG (E.D. Tex.)(Nov. 19, 2019)( "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Kik Interactive, Inc.*, Case No. 2:19-cv-150-JRG-RSP (E.D. Tex.)(Aug. 11, 2020)( "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Riot Games, Inc.*, Case No. 2:19-cv-223-JRG (E.D. Tex.)(Mar. 19, 2020)(two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Pass & Seymour, Inc. v. General Protecht Group, Inc. et al.*, Case No. 5:077-cv-833 (N.D. N.Y.)(Dec. 21, 2011)("for a period of eighteen months (18) months from his or her last review of such information.")
- *Prism Technologies v. Research in Motion, Ltd el al*, Case No. 8:08-cv-537 (D. Neb)(Feb. 9, 2010)("two years (for examination prosecution and support) after that person's last review of the designated information . . . ").
- *WM Wrigley Jr. Co, v. Cadbury Adams USA*, Case No. 2:04-cv-346 (N.D. Ill.)(Jan. 21, 2005)("three years after that person's last review of the designated information . . .")
- *Vest Corporation v. Amdocs Management Limited et al.*, Case No. 3:14-cv-1142 (D. Ore.)(Feb. 21, 2017)("two years after the person last reviews the source code . . . ").

Like its other objections, ZTE has provided no reason why such language is unacceptable – other than it not being in the Sample Protective Order.  If ZTE's language were adopted, an attorney who accessed material early in a case, but moved on from a firm (an withdrew), would be barred

for years to come while a case went to trial and worked its way through one or multiple appeals process. The language used in multiple cases as identified above is a reasonable alternative to expiration of a prosecution bar.

## VI.    Retaining Information Required by Law – Section 23

WSOU also proposed a non-controversial clause whereby a party need not destroy information that is required by law to be retained.  Again, ZTE has provided no problems with such a proposal – other than it is not in the Court's Sample Protective Order.

**ZTE Defendants' Position**

ZTE alleges that its position largely tracks the WDTX default order, except for relatively minor changes

DATED:  March 29, 2021                    Respectfully submitted,

By: _/s/Ryan Loveless_
Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
**Law Firm of Walt, Fair PLLC.**
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092

Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
JeffH@EtheridgeLaw.com


*Counsel for Plaintiff WSOU Investments, LLC*


## Certificate of Service

I certify that this motion is being served to counsel of record via the Court's ECF system on April 29, 2021.

*/s/Ryan Loveless*

Ryan Loveless