**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,** | § | **CIVIL ACTION NO. 6:20-cv-487-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-488-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-489-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-490-ADA** |
| **Plaintiff,** | § | **CIVIL ACTION NO. 6:20-cv-491-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-492-ADA** |
| **v.** | § | **CIVIL ACTION NO. 6:20-cv-493-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-494-ADA** |
| **ZTE CORPORATION, ZTE (USA) INC., AND ZTE (TX), INC.** | § | **CIVIL ACTION NO. 6:20-cv-495-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-496-ADA** |
| | § | **CIVIL ACTION NO. 6:20-cv-497-ADA** |
| **Defendants.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | *FILED UNDER SEAL* |

**RESPONSE OPPOSING ZTE'S RENEWED MOTIONS TO DISMISS**

ZTE USA's and ZTE TX's renewed motion to dismiss or transfer (Dkt. 47)[1] should be denied because venue is proper in this District. ZTE USA has a regularly established place of business in this District ███████████████████████████████████████████████ ██████████████████████████ Venue is also proper because ZTE USA and ZTE TX are deemed to reside here under 28 U.S.C. §§ 1391(d) and 1400(b).

**<u>BACKGROUND</u>**

**A.      ZTE USA maintains a registered agent in this District.**

ZTE USA maintains its registered agent for service in Texas in this District. Ex. 1[2] at 123:24-124:3; Ex. 2. ZTE USA uses, sells, offers for sale, imports, markets, distributes, installs, services, and supports telecommunications equipment in the U.S. *Id.* Ex. 3 ¶ 6 (Declaration of James Ray Wood). While ZTE claims it does not conduct these activities "from" this District, as explained below, the evidence shows ZTE regularly conducts these activities *in* this District.

**B.**      ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] This response does not address section VI of ZTE's motion, which argues this case should be transferred for the convenience of parties and witnesses under 28 U.S.C. §§ 1404(a) and 1406(a), because the Court struck that portion of ZTE's motion as untimely. *See* 12/11/20 "Text Order Striking in Part 47 Motion to Transfer" (stating "Defendant's deadline to file a motion to transfer was November 24, 2020. This motion was filed on December 4, 2020. The motion was thus not timely filed, and the clerk's office is instructed to strike it.  Defendant's Motion to Dismiss will be taken under consideration.").

[2] The numbered exhibits to this motion refer to the exhibits attached to the declaration of Ryan Loveless. While this response is being filed in each of the above captioned cases, to preserve resources, the Loveless Declaration, exhibits and proposed Order are being filed only in the -487 case.

ZTE USA personnel serviced and had continuing contractual obligations to service this equipment, remotely and in person, through the end of 2020. Ex. 5-8 (*see* Ex. 8 at 2, extending agreement through December 31, 2020). The base agreement between ZTE USA and Gogo is dated August 17, 2011. Ex. 5.[3] Public records show three amendments to the agreement, with the obligations under the agreement extending through December 31, 2020. Ex. 5-8. The contract requires ZTE USA to provide the ATG equipment and "installation, optimization, and commissioning of the [ATG Network]." *See* e.g., Ex. 5, at 2. It also imposes Warranty and Service obligations on ZTE USA. *Id.* The Gogo contract requires ZTE USA to provide, upon request from Gogo, "**on-site** engineering services,"[4] "on-site engineering support,"[5] "a ZTE BSS expert **on-site** at Gogo's facility,"[6] "**on-site** BSS / Core networks engineers" and "**on-site** RF/Optimization engineers,"[7] for "a minimum engagement period of three **(3) months**."[8] The agreement also states that ZTE USA maintained a security interest in the equipment and that title does not transfer to Gogo until payment in full. Ex. 5 at 4. There is no evidence title ever transferred from ZTE USA to Gogo.

---

[3] ZTE failed to disclose the existence of the Gogo contracts until after WSOU discovered a redacted copy of the contract filed with the SEC and confronted ZTE about it. Despite being compelled to do so (and misrepresenting to this Court that it had done so), ZTE never produced its contracts with Gogo. Rather, WSOU obtained redacted contracts attached to SEC filings made by Gogo.

[4] Loveless Decl., Ex. 5 at 7. The copy of the contract WSOU obtained from Gogo's public SEC filings redacts information about the on-site engineering services. *Id.* And despite being compelled to produce the Gogo contracts, ZTE has failed to do so.

[5] Loveless Decl., Ex. 6 at 1-2.

[6] Loveless Decl., Ex. 7 at 2.

[7] Loveless Decl., Ex. 6 at 4.

[8] Loveless Decl., Ex. 7 at 4.

████████████████████████████████████████████████

██████████████████████



██████████. Below are photographs of a tower, and adjacent building with ZTE USA equipment, just southwest of Austin. Ex. 19.████████████████████████

████████████████





In addition to Gogo, ZTE USA also has obligations to service ZTE equipment in the WDTX sold to other companies. For example, FCC filings indicate that Rise Broadband ("Rise") "invested several million dollars to purchase ZTE-produced LTE equipment **and support**

services."[9] ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████.

     After WSOU filed suits against ZTE in March of 2020, ZTE attempted to flee this District. ZTE TX re-located its registered agent from the WDTX to the NDTX, ████████████

███████████████████████████████████████████████

███████████████████ ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

    ████████████████████████████████████████

████████████████████████████████████. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

    █████████████████████████████████████

███████████████████████████████████████████████

███████████████ ████████████████████████████████

██████████████████ ██████████████████████████████

███████████████████████████████████████████████.

Ex. 22 (announcing new "partners" including Gogo); ████████████. ████████████

███████████████████████████████ ████████████████

[9]*See*
https://ecfsapi.fcc.gov/file/10203262895645/JAB%20Wireless%20Comments%20in%20WC%20Dkt.%20No.%2018-89%20(2-03-2020).pdf (emphasis added).

[REDACTED]

### C.      ZTE USA's use of warehouses in the WDTX.

To enable delivery of products (including telecommunication equipment and handsets) to customers in this District, [REDACTED] CEVA describes itself as an "end to end supply chain services and solution."  Ex. 13. Importation records show the importation of both handset and non-handset products from CEVA. Loveless, Decl., Ex. 14.

[REDACTED]

ZTE uses CEVA in "handl[ing] delivery to ZTE's USA customers" (Ex. 16 ¶ 18) [REDACTED]

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████ Rise services multiple Western District of Texas cities including Waco, Austin, and San Antonio. *See* Loveless Decl. ¶ 27.[10]

███████████████████████████████████████████████████████
████ An FCC filing made by Rise notes it "has invested several million dollars to purchase ZTE-produced LTE equipment and support services."[11] In a letter to the FCC, Rise reports that it deployed ZTE equipment at 402 different sectors or access points.[12] ██████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████████.

## D.    Distribution of ZTE handsets in the WDTX.

ZTE USA has proclaimed itself to be the "fourth largest smartphone manufacturer in the U.S." and "the second largest in the pre-paid smartphone market."[13] ZTE USA directly sells and delivers phones, including accused products, to consumers, including residents of the WDTX. Ex. 3 at ¶6 ("ZTE (USA) Inc. uses, sells, offers for sale, imports, markets, distributes, installs, services, and supports telecommunications equipment in the U.S. including handsets and network devices, including online sales."). ████████████████████████████████████
ZTE's most recent direct-to-consumer product is the Axon 30.[14] ██████████████████

---

[10] *See also* https://broadbandnow.com/Rise-Broadband

[11] *See* https://ecfsapi.fcc.gov/file/10203262895645/JAB%20Wireless%20Comments%20in%20WC%20Dkt.%20No.%2018-89%20(2-03-2020).pdf

[12] See https://ecfsapi.fcc.gov/file/10826249451344/Supply%20Chain%20Ex%20Parte%20Letter.pdf

[13] *See* https://www.zteusa.com/about-us

[14] *See* https://na.ztedevices.com/products/axon-30-ultra

██████████████████████████████████████████████████. ZTE products are also sold in multiple stores in the Western District of Texas. ███████████████████████ ███████████████████████████████ The GizmoWatch 2 is available at Verizon stores in Waco. Ex. 14 at 9.[15]

### E. ZTE TX is a resident of Texas.

It is undisputed that ZTE TX is a resident of Texas. WSOU filed its original complaints against ZTE TX in this District between March 23, 2020 and March 31, 2020. *See* Civil Action Nos. 6:20-cv-211, -216, -224, -228, -229, -231, -238, -240, -242, -254, and -255. ZTE TX accepted service of WSOU's original complaints at the office of ZTE TX's registered agent in Austin, Texas. *See, e.g.* Civil Action No. 6:20-cv-00211-ADA, Dkt. 10.

On May 14, 2020, ZTE TX changed its registered office from Austin, Texas to Dallas, Texas. Loveless Decl., Ex. 14. WSOU voluntarily dismissed the original complaints and re-filed the current complaints on June 3, 2020. *See* Civil Action Nos. 6:20-cv-211, -216, -224, -228, -229, -231, -238, -240, -242, -254, and -255.

### F. ZTE's failure to disclose relevant information.

During venue discovery, ZTE repeatedly withheld relevant information. ZTE did not disclose its contracts with Gogo, for example, until after WSOU located public redacted versions of the contracts and confronted ZTE. Even after ZTE was compelled to produce the Gogo contracts, ZTE failed to do so. Further, after ZTE was compelled to produce a second witness with knowledge concerning ZTE USA, ZTE Corporation, and ZTE TX, ████████████████████ ███████████████████████████ ██████████████████████████████ ██████████████████████████████████████████████████████ ███████████. Further, although the deposition topics included the Gogo contract and ZTE's servicing and installation of equipment at specific addresses under the Gogo contract, ████

---

[15] ZTE failed to produce the specific contracts governing this product.



## <u>ARGUMENT AND AUTHORITIES</u>

**A.      ZTE USA has committed acts of infringement in this District and has a regularly established place of business in this District.**

Under § 1400(b), venue in a patent infringement case is proper "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C.A. § 1400 (West). Venue is proper here because ZTE USA has committed acts of infringement here and has a regular and established place of business in this District.

ZTE's motion to dismiss contains a single sentence arguing that WSOU fails to allege an act of infringement in this District. ZTE makes no serious effort, however, to dispute WSOU's allegation that ZTE has committed acts of infringement here and cannot plausibly deny that its alleged acts of infringement have occurred in this District.

The Federal Circuit has interpreted "has a regular and established place of business" to mean: (1) there must be a physical place in the district; (2) the physical place must be a regular and established place of business; and (3) the regular and established place of business must be the place "of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017). The regular and established place of business requires the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 - 47 (Fed. Cir. 2020).

1. **Cell towers and buildings housing ZTE equipment serviced by ZTE personnel are a regularly established place of business of ZTE.**



**Places of business**:  The cell towers and adjacent buildings where ZTE installs and services its equipment satisfy the first *Cray* factor because they are physical places in this District. *See In re Google LLC*, 949 F.3d 1338, 1343 (Fed. Cir. 2020) (rejecting Google's argument that the physical "place of business" inquiry should focus on "whether the defendant has real property ownership or a leasehold interest in real property" and recognizing that Google's "GGC servers" could satisfy *Cray* because they "are physically located in the district in a fixed, geographical location."). Here, like the GGC servers, ZTE's equipment is in a fixed, geographical location.

Further, unlike *In re Google*, here the contract requires "an employee or agent of the defendant to be conducting business at that place." Specifically, ZTE is required to deliver, install, and service ZTE's equipment at the towers. Ex. 5-8. Further, ZTE USA has a registered agent in this District capable of accepting service. Ex. 2.

**Regular and established**: ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

The Gogo contract requires a **minimum** of three months of service for each service request. *See e.g.*, Ex. 7 at 4. Thus, such a service is not a "one-time event" and is "regular and established" business of ZTE. *See e.g.*, Ex. 7 at 4; *cf In re Google LLC*, at 949 F.3d at 1346 ("The installation activity does not constitute the conduct of a 'regular and established' business, since it is a one-time event for each server.").[16]

Moreover, the evidence shows ZTE's service and warranty obligations are not limited to the equipment ZTE sold to Gogo. An FCC filing indicates that Rise "invested several million dollars to purchase ZTE-produced LTE equipment **and support services**."[17] Rise services multiple Western District of Texas cities including Waco, Austin, and San Antonio.[18] ████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

In short, while ZTE has not disclosed the full extent of its equipment located in the WDTX or ZTE's contractual obligations to service such equipment, the evidence shows ZTE is in the business of installing and servicing equipment in this District, that ZTE personnel have performed such services, and that the service is not isolated or irregular.

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[16] ZTE's service is also different from the installation activity discussed in *In re Google* because, here, installation and servicing of ZTE's equipment **is** the business ZTE is conducting, not merely ancillary to it.

[17] *See* https://ecfsapi.fcc.gov/file/10203262895645/JAB%20Wireless%20Comments%20in%20WC%20Dkt.%20No.%2018-89%20(2-03-2020).pdf

[18] *See* https://broadbandnow.com/Rise-Broadband.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█ █████████████████████████████████████████████
████████████████████

    This is not a situation where ZTE's customers, like Gogo, could simply find a different supplier to service ZTE equipment. ZTE's customers needed support from engineers with expertise relating to ZTE's equipment. Indeed, at least Gogo had a contractual right to demand a "ZTE BSS expert" on-site. Ex. 7 at 2. Only one month after WSOU filed suit against ZTE in the WDTX, ███
███████████████████████████████████████████████
██████████████ DFW, a company coincidentally located within minutes of ZTE's office in Richardson, Texas.[19] ██████████████████████████████████████████
████████████████████████████████████████, appears to be nothing more than a sham designed for the purpose of withdrawing ZTE from this District while still honoring its contractual obligations to service equipment in this District. ████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████

    Further, even if the continuing services through DFW are ignored, defendant "cannot establish a business in a particular judicial district and then abandon or sell it without remaining amenable to suit for venue purposes in that district for a reasonable time[.]" *Welch Sci. Co. v.*

---

[19] See https://www.dfwtechnology.com/contact.

*Human Eng'g Inst., Inc.*, 416 F.2d 32, 36 (7th Cir. 1969) (finding venue proper under § 1400(b) where defendant ceased doing business in the district only 37 days before the suit was filed).

**Places of the defendant**: The cell towers where ZTE installs and services its equipment satisfy the third *Cray* factor because ZTE maintains a property interest in the ZTE equipment on the towers. Specifically, ZTE USA maintains a purchase money security interest in the ATG-4 Products on the towers until receiving full payment of all undisputed amounts for the ATG-4 Products. There is no evidence title ever transferred from ZTE to Gogo. ZTE's right to install, maintain, and service its equipment at the cell towers is like a lease. Further, it is a place where ZTE's business – installing and servicing telecommunications equipment – is carried out. Further, the services required by the Gogo contract are not ancillary to ZTE's business. Rather, installation and service of the equipment *is* the business being conducted by ZTE. *See* Ex. 5-8.

**B.      Venue is also proper because ZTE USA and ZTE TX (collectively "ZTE") is deemed to reside in this District.**

Venue is also proper because ZTE is deemed to reside here under the plain terms of 28 U.S.C. §§ 1391(d) and 1400(b). Under § 1400(b) of chapter 28, a civil action for patent infringement "may be brought in the judicial district where the defendant resides." 28 U.S.C. § 1400(b). Section 1400(b) of chapter 28 does not define "reside." Instead, for states with multiple districts, § 1391(d) of chapter 28 defines where a corporation resides "[f]or purposes of venue under this chapter[.]" See 28 U.S.C. 1391(d) (emphasis added).

Because "this chapter" refers to chapter 87 of title 28, which includes §1400(b), the definition of "reside" found in § 1391(d) "for purpose of venue under this chapter" must be incorporated in § 1400(b). *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574,

1575 (Fed. Cir. 1990), sometimes incorrectly cited as abrogated by *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017).

Section 1391(d) states that, in states with multiple districts, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state." 28 U.S.C. 1391(d). Here, because ZTE's contacts with this District would be enough to subject it to personal jurisdiction in this District, it is deemed to reside here.

### a. *Fourco* and *TC Heartland* do not address new § 1391(d) and should not preclude this Court from applying § 1391(d).

The Supreme Court's decisions in *Fourco* and *TC Heartland* does not require a different conclusion. The Supreme Court has never determined whether a general venue statute that governs the "chapter" to which § 1400(b) belongs must be applied to § 1400(b). Instead, each time the Supreme Court has considered the effect of § 1391(c), it has interpreted a version of § 1391(c) that does not include the phrase "under this chapter." *See TC Heartland*, 137 S. Ct. at 1521; *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 222, 77 S. Ct. 787, 788, 1 L. Ed. 2d 786 (1957).

### i. *Fourco* does not address new language of § 1391(d).

In *Fourco*, the Supreme Court held that 28 U.S.C. § 1400(b) was, at that time, the "sole and exclusive provision controlling venue in patent infringement actions, and that it [was] not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." *Fourco*, 353 U.S. 222 (emphasis added). Section 1391(c) was, however, a significantly different statute when *Fourco* was decided in 1957. It stated:

> (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

*See id. Fourco* did not and could not consider whether 28 USC § 1400(b) is supplemented by what is now 28 USC 1391(d).

In 1988, Congress amended 1391(c) – the venue provision at issue in *Fourco* – to state:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction . . .

28 U.S.C. § 1391 (1988) (emphasis added).

Two years later in *VE Holding*, the Federal Circuit considered whether "by [the 1988] amendment to § 1391(c) of chapter 87, Congress meant to apply [the new] definition [of 'reside'] to the term as it is used in § 1400(b)[.]" *VE Holding*, 917 F.2d at 1575. The Federal Circuit recognized:

> Section 1391(c) as it was in *Fourco* is no longer. We now have exact and classic language of incorporation: For purposes of venue under this chapter[.]

*Id.* at 1579 (emphasis added). It concluded that because 28 USC § 1400(b) and 28 USC § 1391(d) belong to the same "chapter" (chapter 28), the definition of "reside" provided in section 1391(c) "for purposes of venue under this chapter" must apply to section 1400(b). Id. at 1579 (noting it "would not be sensible to require Congress to say, 'For purposes of this chapter, and we mean everything in this chapter . . .,' in order to ensure that it has covered everything in a chapter of the statutes") (emphasis in original).

The Federal Circuit bolstered its decision by noting the following from a December 4, 1986 memorandum to the subcommittee explaining the proposed revision:

> The [new] definition of corporate residence in § 1391(c) now provides a basis for applying the substantial number of venue statutes enacted as part of various substantive federal laws. As a matter of caution, the proposal limits its definition of residence to the venue provisions gathered in Chapter 87 of the Judicial Code, 28 U.S.C. §§ 1391 through 1412.

*Id.* at 1582 (emphasis in original).

*VE Holding* refuted the argument that under *Fourco*, the only way for Congress to change venue in a patent infringement action is to change § 1400(b), noting that the Supreme Court had already found § 1400(b) was supplemented by former § 1391(d) in patent suits against foreign defendants:

It is sometimes said that, since *Fourco*, the only way to change the way that venue in patent infringement actions is determined is to change § 1400(b). This argument fails, however, because the Supreme Court, in Brunette, 406 U.S. 706, 92 S.Ct. 1936, refused to impose such a disablement upon the Congress' ability to enact or amend legislation. The issue in Brunette was whether § 1400(b) governed venue in a patent suit involving a foreign corporation, or whether the general venue provision applicable to aliens, 28 U.S.C. § 1391(d), governed. The Court held § 1391(d) applied, and that § 1400(b) was supplemented by the provision governing suits against aliens.

Id. at 1579 (emphasis added).

### ii.  2011 Amendments to § 1391 did not remove "under this chapter" from new § 1391(d).

In 2011, Congress again amended § 1391 by striking subsections (a) through (d) and replacing them with new subsections (a) through (d). As part of the amendment, § 1391(c) (the section at issue in *VE Holding*) was moved to § 1391(d). That section still defines "residency of corporations in states with multiple districts" for "purposes of venue under [chapter 28]." 28 U.S.C. § 1391(d). New § 1391(c) now defines residency for natural persons, "entities with the capacity to sue and be sued" in states that do not have multiple districts, and aliens. It does not contain the specific language of incorporation "under this chapter." Instead, it states in relevant part:

(c) **Residency.**--For all venue purposes--

(1) a natural person . . . ;

(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and

(3) a defendant not resident in the United States may be sued. . .

28 U.S.C. § 1391.

### iii.  *TC Heartland* does not address new § 1391(d).

In 2017, the Supreme Court held that the definition of "reside" in new § 1391(c)(2) does not apply to § 1400(b). *See TC Heartland*, 137 S. Ct. at 1521. *TC Heartland* rejected the argument

that the phrase "[f]or all venue purposes" in new § 1392(c)(2) required applying the section to § 1400(b), pointing out that: (1) the statute at issue in *Fourco* included similar language ("for venue purposes"); and (2) new § 1391(a) contains a "savings clause" stating that § 1391 "shall govern the venue of all civil actions" "[e]xcept as otherwise provided by law." Id. at 1516. *TC Heartland* further found that the absence of "under this chapter" in new § 1391(c) showed Congress did not intend new § 1391(c) to define "reside" for § 1400(b). Id. at 1521 ("Congress deleted 'under this chapter' in 2011 and worded the current version of § 1391(c) almost identically to the original version of the statute.").

The opposite is true for current § 1391(d), which does not use the general language "[f]or all venue purposes" and instead retains the specific, classic language of incorporation considered in *VE Holding*: "[f]or purposes of venue under this chapter[.]" 28 U.S.C. § 1391(d) (emphasis added). The broader phrase "[f]or all venue purposes" evaluated in *TC Heartland* does not have the same impact because it is general language that does not specifically apply to chapter 28. As *Fourco* recognized, "[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling." *Fourco*, 353 U.S. at 228–29.

Although *TC Heartland* contains certain broad statements about "§ 1391," the discussion in *TC Heartland* is limited exclusively to the effect of the language in new § 1391(c)(2). Limiting its discussion to the language of § 1391(c)(2) was appropriate because the case on appeal in *TC Heartland* involved a suit brought in Delaware, a state with only one district. Therefore, only the new § 1391(c)(2) was properly at issue. There is no mention of the new §1391(d) in *TC Heartland* and no discussion concerning whether the definition of residence in the new §1391(d) applies to §1400(b).

Any notion that *TC Heartland* must apply to the whole of § 1391 is refuted by the Court's refusal to address the new § 1391(c)(3). Just as § 1391(d) was not at issue in *TC Heartland* because the case on appeal was filed in a state with only one district, § 1391(c)(3) was not at issue because the defendant was a resident of the United States. The Court refused to address the new § 1391(c)(3) or "express any opinion on this Court's holding in Brunette" (which applied old §

1391(d) in patent cases despite § 1400(b)). *See TC Heartland* at 7, n. 2. Any notion that *TC Heartland* applies to the whole of § 1391 is further refuted by In Re HTC Corp., in which the Federal Circuit refused to extend *TC Heartland* to § 1391(c)(3) and instead affirmed Brunette. In re HTC Corp., 889 F.3d 1349, 1356 (Fed. Cir. 2018), cert. denied sub nom. HTC Corp. v. 3G Licensing, S.A., 139 S. Ct. 1271, 203 L. Ed. 2d 279 (2019) (cleaned up) (emphasis in original) ("as the Court held in Brunette, § 1400(b) itself was not intended to apply to alien defendants").

### iv. Only *VE Holding* addresses the relevant language at issue.

It is instructive to compare the statutory provisions at issue in *Fourco*, *TC Heartland*, and *VE Holding*. Of the three, only *VE Holding*, where certiorari was denied in 1991, involves the language of incorporation at issue here.

> Statutory language at issue in *Fourco*: (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

> Statutory language at issue in *VE Holding*: (c) For purposes of venue **under this chapter**, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced . . .

> Statutory language at issue in *TC Heartland*: For all venue purposes -- (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . .

> Language it issue in this case: (d) **Residency of corporations in States with multiple districts**.--For purposes of venue **under this chapter**, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction . . .

WSOU does not challenge the correctness of applying *Fourco* and *TC Heartland* under the facts of those cases. In both cases, the statutory language did not include classic language of incorporation "under this chapter." WSOU does challenge the correctness of applying *TC Heartland* to hold that new § 1391(d), which expressly defines "reside" for "purposes of venue under [chapter 28]" somehow does not apply to § 1400(b) of chapter 28. *Fourco* and *TC Heartland* simply applied previous versions of the general venue statute and (so long as they are limited to

the provisions they addressed) were correctly decided; however, neither case addressed the new statutory language under § 1391(d).

### v. WSOU requests that this Court revisit *Toybox*.

WSOU asks this Court to revisit the Austin court's decision in *Toybox*, where the court relied on § 1391(a) and concluded that *Fourco* conflicts with the current version of § 1391(d) by defining "resides" in § 1400(b) for purposes of domestic corporations. *Interactive Toybox, LLC v. Walt Disney Co.*, 1:17-CV-1137-RP, 2018 WL 5284625, at *2 (W.D. Tex. Oct. 24, 2018). *Fourco* did not address whether new § 1391(d) is consistent with the definition of "resides" for purposes of § 1400(b). The legislative history for the 2011 amendments explains that "[n]ew paragraph 1391(a)(1) would follow current law in providing the general requirements for venue choices, but would not displace the special venue rules that govern under particular Federal statutes." See H.R. REP. 112-10, 18, 2011 U.S.C.C.A.N. 576, 580 (emphasis added). At the time this amendment was passed, *VE Holding* had been part of the "special venue rules that govern under particular Federal statutes" for over fifty years. Congress knew how §§ 1391 and 1400(b) were applied under *VE Holding* and retained the very language of incorporation *VE Holding* was based on. To conclude that *Fourco* provides a definition of "reside" that conflicts with the "special venue rules that govern under particular Federal statutes," one must first disregard how §§ 1391 and 1400(b) were applied under *VE Holding*. This can be done only by assuming, from the outset, that *TC Heartland* abrogates *VE Holding* as it relates to § 1391(d). As explained above, *TC Heartland* did not address new § 1391(d) because that question was not properly before the Court.

The notion that *Fourco* is the sole and complete source of the definition for "reside" under the current version of § 1391(d) is belied by the Federal Circuit's recent recognition that "*Fourco* . . . simply did not address the corporate venue at the district level of granularity." *In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018) (emphasis added) (considering "Which single judicial district in a multi-district state is the proper judicial district for purposes of venue

under § 1400(b) in an infringement suit against a corporate defendant?").[20] In other words, *Fourco* did not consider the very question Congress answered by passing § 1391(d).

*Fourco* was based on an entirely different version of § 1391 than the current version. The Austin Court's reliance on *Fourco*'s interpretation of old statutory language to interpret new statutory language is incorrect.

      vi.     **ZTE has sufficient contact with this District to subject it to personal jurisdiction, and therefore, venue.**

ZTE's contacts with this District are sufficient to subject ZTE to personal jurisdiction (and therefore venue) in this District at least because ZTE purposefully places accused products into the stream of commerce in this District. In *Slyce*, this Court "applied personal jurisdiction against an out of state defendant that sold its software to a third-party, who then bundled the software into an app and sold it in the United States." *Match Group, LLC v. Bumble Trading Inc.*, W-18-CV-00080-ADA, 2020 WL 1287958, at *4 (W.D. Tex. Mar. 18, 2020) (summarizing *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2019 WL 7598931 (W.D. Tex. Oct. 22, 2019), reconsideration denied, No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020)). This is precisely how ZTE Corporation and ZTE USA operate. Ex. 16 ¶ 18.

Further, ZTE TX's contacts with this District go beyond placing accused products into the stream of commerce. It is undisputed that ZTE TX is incorporated in Texas, had a registered agent here until May 14, 2020, and that ZTE TX's registered agent in Austin **accepted service** of WSOU's complaints in the original cases. *See, e.g.* Civil Action No. 6:20-cv-00211-ADA, Dkt. 10.[21]

      vii.     **ZTE TX is deemed to reside in this District because it is incorporated in Texas and had its registered office in this District until May 14, 2020.**

---

[20] Like *TC Heartland*, *BigCommerce* contains no discussion of the impact of the current version of § 1391(d) on § 1400(b). Thus, although *BigCommerce* involves a multi-district state, the issue considered by *BigCommerce* is whether a defendant who is incorporated in a state "resides" in every district within that state by virtue of being incorporated within the state.

[21] By accepting service, ZTE TX indisputably consented to jurisdiction in the original cases, which alleged the *same* infringement as the current cases.

If a corporate defendant does not maintain a principal place of business within the state in which it is incorporated, then the "natural default is to ***deem it to reside*** in the district in which its registered office, as recorded in its corporate filings, is located[.]" *In re BigCommerce, Inc.*, 890 F.3d at 985. Here, it is undisputed that ZTE TX was "deemed" to reside in this District at the time WSOU filed its original complaints because, at the time, WSOU's registered office was in Austin, Texas.

Even if the original complaints are ignored, ZTE TX should still be deemed to reside in this District because it changed its registered office from Austin to Dallas only *twenty days* before the current cases were filed. A defendant "cannot establish a business in a particular judicial district and then abandon or sell it without remaining amenable to suit for venue purposes in that district for a reasonable time[.]" *Welch Sci. Co.*, 416 F.2d at 36 (finding venue proper under § 1400(b) where defendant ceased doing business in the district only 37 days before the suit was filed). ZTE TX should not be allowed to evade venue in this District by abandoning its registered office in Austin *after* WSOU filed its original complaints here and only twenty days before WSOU re-filed its current complaints. At the very least, venue is proper here because the current complaints were filed a reasonable time after ZTE TX attempted to abandon this District.

There is nothing unfair about this outcome. ZTE TX claims this District (not the NDTX) is the only district in Texas where ZTE TX has maintained a physical place of business. *See* Mtn., Shan Decl. 14. ZTE TX's registered office in the NDTX is merely the Dallas location of CT Corporation System.

Dated: June 18, 2021

Respectfully submitted,

By:     */s/ Ryan Loveless*
        James L. Etheridge
        Texas Bar No. 24059147
        Ryan S. Loveless
        Texas Bar No. 24036997
        Etheridge Law Group, PLLC
        2600 E. Southlake Blvd., Suite 120 / 324
        Southlake, TX 76092
        Tel.: (817) 470-7249
        Fax: (817) 887-5950
        Jim@EtheridgeLaw.com
        Ryan@EtheridgeLaw.com

        Mark D. Siegmund
        State Bar No. 24117055
        mark@waltfairpllc.com
        Law Firm of Walt, Fair PLLC.
        1508 North Valley Mills Drive
        Waco, Texas 76710
        Telephone: (254) 772-6400
        Facsimile: (254) 772-6432

        *Counsel for Plaintiff WSOU Investments, LLC*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically

via the U.S. District Court [LIVE]-Document Filing System to all counsel of record June 18, 2021.

        */s/ Ryan Loveless*
        Ryan S. Loveless