# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, <br><br>*Plaintiff*, <br><br> v. <br><br> ZTE CORPORATION, <br><br> *Defendant.* | § § § § § § § § § § § § § § § § | C.A. NO. 6:20-cv-00492-ADA <br><br> PUBLIC VERSION |

**DEFENDANT ZTE CORPORATION'S OPPOSED MOTION FOR ATTORNEY FEES**

**TABLE OF CONTENTS**

I.   INTRODUCTION – THIS CASE WAS EXCEPTIONAL DUE TO WSOU'S VEXATIOUS LITIGATION CONDUCT ................................................................. 1

II.  BACKGROUND – PTAB INVALIDATED ALL CLAIMS OF THE '071 PATENT ........................................................................................................................ 1

III. LEGAL PRECEDENT – WSOU TURNED THIS CASE EXCEPTIONAL ..................... 2

IV.  ARGUMENT – WSOU'S LITIGATION MISCONDUCT SHOULD BE DETERRED ............................................................................................................. 3

    A.   WSOU's Multiple Unfounded Fees Requests Make this Case Exceptional ........... 3

        1.   First, WSOU Sought Fees in Opposing a Stay of this Case Despite the PTAB Decision Invalidating All Claims at Issue. .............................. 4

        2.   Second, WSOU Sought Fees in Seeking Discovery Over Devices Only Named in this Case, After PTAB Had Already Invalided All Claims. ........................................................................................................ 4

        3.   Third, WSOU Sought Fees in Opposing ZTE's Motion to Dismiss for Lack of Standing and Relief Under Rule 37 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. ............................................................. 5

        4.   Fourth, WSOU Sought Fees when ZTE Sought Withheld Discovery. ................................................................................................ 7

        5.   WSOU's Many Other Requests for Fees. ................................................. 7

    B.   This Case Was Exceptional Due to WSOU's Objectively Weak Case, Fraught with Weak Facts and Nearly Non-Existent Case Law. ........................... 8

        1.   First, WSOU Forced Wasteful Double Briefings on Multiple Complaints Though an Unsupported Reading of FRCP Rule 12. .............. 8

        2.   Second, WSOU Presented a Faulty Venue Legal Theory Based on Denied Law. .............................................................................................. 9

        3.   Third WSOU Presented Contradictory Arguments on Whether the ZTE Subsidiary Parties Were Necessary. ................................................ 10

V.   CONCLUSION – WSOU'S MISCONDUCT SHOULD BE DETERRED ..................... 10

**I.     INTRODUCTION – THIS CASE WAS EXCEPTIONAL DUE TO WSOU'S VEXATIOUS LITIGATION CONDUCT**

WSOU—a serial filer with more than 200 patent cases filed since 2020, drawing notable reputation from the Federal Circuit as a venue manipulator with little ties to this forum—dismissed its case with prejudice on October 3, 2022, as the USPTO invalidated the sole asserted patent. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320-21 (Fed. Cir. 2021). But despite knowing there were no surviving valid claims, WSOU refused to stay this case ***and requested fees for the motion to stay*** after the USPTO's decision issued, continued to insist on discovery for devices only named in this case, and ***further requested fees when ZTE opposed*** that wasteful discovery. This was not the first time WSOU vexatiously threatened sanctions to chill ZTE's advocacy, and WSOU's underlying positions were often fraught with weak facts and weak legal precedent.

WSOU's collective misconduct exemplified an improper vexatious strategy that the Court should deter for any case WSOU litigates. First, the constant baseless ringing of the fee death knell in this case should not only be deterred but warrants compensation for ZTE. Even though WSOU finally admitted to materially altering and withholding discovery, WSOU still sought fees whenever ZTE requested the withheld production. Second, WSOU's litigation positions were frequently devoid of factual or legal support, and often shifted to suit the moment resulting in contradictory statements. Viewed in the totality of the circumstances, WSOU's vexatious litigation misconduct should be deterred and ZTE should be compensated with attorney fees under § 285.

**II.    BACKGROUND – PTAB INVALIDATED ALL CLAIMS OF THE '071 PATENT**

WSOU filed its initial Complaint against ZTE on June 3, 2020, asserting only U.S. Pat. No. 8,147,071. Dkt. 1. ZTE timely challenged all claims in an IPR on March 26, 2021, which the PTAB instituted on September 27, 2021. IPR2021-00695. With a final written decision due imminently, ZTE sought a stay on August 25, 2022. Dkt. 218. The PTAB invalidated all asserted

claims on September 1, 2022, eliminating the merits of WSOU's case. Dkt. 224, Ex. 32. Yet, a week later, on September 8, 2022, WSOU opposed the motion to stay. Dkt. 221. This case was dismissed *with prejudice* on October 3, 2022. Dkt. 230.

WSOU has continually made unfounded requests for fees. Indeed, WSOU made at least five distinct fees demands. Those include (1) a fee request with its opposition to ZTE's motion to stay, despite the patent already having been invalidated (Dkt. 221); (2) a separate fee request when ZTE opposed discovery of products named exclusively in this case after the claims where invalidated (Dkt. 227); (3) another fee request for opposing ZTE's motions to dismiss for lack of standing and seeking relief under Rule 37 (Dkt. 213); (4) a fee request for ZTE seeking improperly withheld discovery (Dkt. 210, pp. 20-30); and (5) several other fee requests throughout hearings.

And WSOU, from the start of this case, unnecessarily insisted on multiplication of litigation—or even *unnecessary* litigation. For instance, (1) WSOU insisted on double parallel briefing for the initial complaint and its amended complaint (Dkts. 34, 35, 40, 41, 45); (2) WSOU sought venue discovery based on outdated and denied case law (Dkts. 89, and Dkt. 91); and (3) presented inconsistent legal theories regarding the necessity and entanglement of misvenued ZTE subsidiaries to WSOU's legal theories of infringement (Dkts. 200 and 25).

### III.   LEGAL PRECEDENT – WSOU TURNED THIS CASE EXCEPTIONAL[1]

Under 35 U.S.C. §285, courts may award reasonable attorney fees to the prevailing party in "exceptional cases." The only requirement is that the case must be "exceptional." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's

---

[1] Under 28 U.S.C. § 1927, a federal court may award attorney fees, costs, and expenses that were "reasonably incurred" because of opposing counsel's "unreasonabl[e]" and "vexatious[]"multiplication of legal proceedings. *Morrison v. Walker*, 939 F.3d 633, 637 (5th Cir. 2019); *see also Browning v. Kramer*, 931 F.2d 340, 346 (5th Cir. 1991).

2

litigating position (considering both the governing law and the fact of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. District courts should consider the totality of the circumstances in exercising their discretion to award attorney fees on a "case-by-case" basis. *Id.* The prevailing party need only establish its right to recover fees by a preponderance of the evidence. *Id.* at 557. In exercising their discretion, courts may consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. A case may also be exceptional under § 285 where the party's arguments are objectively unreasonable or where the case was litigated in bad faith. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 886 F.3d 1330, 1336 (Fed. Cir. 2017) (citing *Octane*); *Nova Chems. Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017).

## IV. ARGUMENT – WSOU'S LITIGATION MISCONDUCT SHOULD BE DETERRED

It is undisputable that ZTE is the prevailing party, as this case was dismissed with prejudice after the PTAB invalidated all claims for the lone asserted patent. Here, WSOU's conduct made this case exceptional for two reasons. First, WSOU made multiple, unfounded requests for fees, in an apparent attempt to chill ZTE's advocacy. And second, WSOU continued to present a substantively weak case with little to no support. Viewed in the totality of the circumstances, this is exactly the sort of exceptional conduct § 285 is intended to deter. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (finding that "vexatious litigation strategy" and "litigation misconduct" are sufficient for finding a case exceptional).

### A. WSOU's Multiple Unfounded Fees Requests Make this Case Exceptional.

Time after time WSOU sought to mask weak positions with unfounded requests for sanctions to chill ZTE's advocacy of routine motions. WSOU owed ZTE a duty of care to investigate before opposing arguments—and certainly ***a second duty*** to properly investigate before

3

seeking fees in retaliation. WSOU failed to do either on multiple occasions, as detailed below. "To advance the considerations of deterrence and compensation,", the Court should find this case exceptional. *Adaptix, Inc. v. Alcatel-lucent USA, Inc.*, 2016 WL 6915309, at *5 (E.D. Tex. 2016).

1. **First, WSOU Sought Fees in Opposing a Stay of this Case Despite the PTAB Decision Invalidating All Claims at Issue.**

The PTAB issued a final written decision invalidating all asserted claims at issue here on September 1, 2022. Subsequently, WSOU not only wasted resources opposing a stay, but it further sought fees in its opposition, arguing that *ZTE* wasted resources and should not be "permitted . . . without repercussions" to seek a stay of this case. Dkt 221, p. 10; *see also* Dkt. 116, p. 4 (arguing that PTAB proceedings violate the Seventh Amendment). The Court agreed, WSOU's underlying argument opposing the stay here was unfounded. Sept. 19, 2022, Hr'g. Tr. 28:19-23. WSOU's additional request for fees compounds this already exceptional behavior. WSOU's demands for fees after its patent was invalidated show why the Court should find this case exceptional.

2. **Second, WSOU Sought Fees in Seeking Discovery Over Devices Only Named in this Case, After PTAB Had Already Invalided All Claims.**

Indeed, rather than agreeing to stay discovery in this case in view of the PTAB's decision invalidating all claims, WSOU doubled down and sought further discovery for devices named only in this case—***and sought additional fees*** for that discovery. Dkt. 221, p. 10 (WSOU requesting "fees and costs incurred" responding to ZTE's motion to stay). WSOU's September 1, 2022, discovery dispute chart confirms that (1) WSOU sought discovery of devices only named here, and (2) WSOU requested sanctions for that discovery. *See* Ex. 1 (Atts. 1-2 listing sought discovery of Spro and Spro Plus devices); *see also* Ex. 2, p. 4 (confirming that WSOU "still improperly [sought] discovery over [Spro devices] associated with unpatentable claims").

4

### 3. Third, WSOU Sought Fees in Opposing ZTE's Motion to Dismiss for Lack of Standing and Relief Under Rule 37 ▉

ZTE moved to dismiss for lack of standing, ▉

▉ In opposing, WSOU argued that "ZTE should be sanctioned for acting in bad faith, repeatedly harassing [WSOU] . . . and unnecessarily raising the cost of litigation." Dkt. 213, pp. 29-30. ▉

▉

| ZTE's Sought Relief Under Rule 37 | |
|---|---|
| "WSOU continuously misstated that its production was completed on March 3rd, despite supplemental productions on June 28, July 14, July 21, and August 9 [and now several in October]." Dkt. 215, pp. 9-10. | ▉ |
| "WSOU erroneously alleges that it is 'not withholding any discoverable documents,' (Opp. 27) and instead that ZTE should be sanctioned for daring to request the withheld discovery (Opp. 29). ZTE properly requests discovery—and its requests are not sanctionable. In fact, WSOU's two-faced conduct persisted *after filing* its opposition, as the day after filing, WSOU produced discovery at issue here underscoring that | ▉ |

5



| | |
|---|---|
| WSOU *still* failed to complete its production as claimed." Dkt. 215, p. 10. | |
| "As another questionable tactic, WSOU opposes discovery of its fact witnesses' testimony—including that of Mr. Etchegoyen. It is hard to fathom how sworn testimony of fact witnesses *is not* discoverable (especially regarding the *same* legal issues),5 or further still how WSOU believes it is appropriate to seek attorney fees because ZTE seeks this discovery. Opp. 29." Dkt. 215, p. 14. | |
| "As another example of WSOU's two-faced gamesmanship, WSOU opposes all discovery of its sister cases sealed filings—yet WSOU selectively relies on those hidden rulings when it suits it." Dkt. 215, p. 14. | |

WSOU's discovery deficiencies violating Court orders were well documented—WSOU continuously misstated the record by falsely representing that its production was complete while withholding key documents, and WSOU further concealed, or at least failed to investigate those improper withholdings before seeking fees. Dkt. 210, pp. 20-25 and Dkt. 215, pp. 8-15. *See also Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1027 (Fed. Cir. 2008) (affirming finding that

6

repeated false claims during discovery warranted awarding fees for prevailing party). And whenever ZTE raised these deficiencies, WSOU sought fees. Dkt. 213, pp. 29-30. But as WSOU's letter shows, ZTE's requests were well founded, and should have been investigated sooner.[2]

    **4.    Fourth, WSOU Sought Fees when ZTE Sought Withheld Discovery.**

  (1) failed to rectify its ill-begotten gains stemming from its admitted-withheld discovery, and (2) failed to apologize to ZTE for slanderous requests of fees from *both* the Motion to Dismiss and Relief under Rule 37 briefing (Section IV.A.3) and then again for the underlying discovery disputes. Despite WSOU's withholding of discovery, on June 21, 2022, WSOU requested that the "Court entertain or consider awarding costs or fees to prevent ZTE from raising these disputes again in the future." June 21, 2022, Hr'g. Tr. at 25:12-18. WSOU's unapologetic additional vexatious requests for fees warrants deterring WSOU's conduct for this case *and any other* it litigates.

    **5.    WSOU's Many Other Requests for Fees.**

WSOU's additional cries of wolf were pervasive throughout this case as it liberally sought fees without concern of deterrence. In fact, it was nearly routine for WSOU to seek fees whenever

---

[2] WSOU also opposed reasonable discovery requests throughout this case                    illustrate the follies of enabling WSOU to act as the sole arbiter deciding the scope of information "reasonably calculated to lead to the discovery of admissible evidence." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011); *compare* Dkt. 82 (the Court ordering for venue discovery the production of sealed documents from non-relevant sister ZTE cases), with Dkt. 205 (the Court denying for fact discovery the production of sealed documents from relevant sister WSOU cases); *see also Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) (affirming that losing party's knowingly withholding relevant information warranted awarding fees).

it suited them—e.g., September 28, 2021, discovery dispute hearing (Hr'g. Tr. at 4:18-23).[3] The collection of WSOU's fee death knell tolling warrants deterrence and a finding of fees for ZTE.

### B. This Case Was Exceptional Due to WSOU's Objectively Weak Case,[4] Fraught with Weak Facts and Nearly Non-Existent Case Law.

WSOU's fee death knelling stands in sharp contrast to the case WSOU presented. WSOU's litigation positions, as detailed below, were frequently devoid of factual or legal support, and often shifted to suit the moment (despite resulting in contradictory statements). Charitably, WSOU's case could at best be described as "sloppy." The Federal Circuit and other circuits in analogous context concluded that *isolated* inadvertent sloppiness does not rise to the level of sanctionable litigation misconduct—*yet aggregated and continued* sloppiness amounts to litigation misconduct. *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1376 (Fed. Cir. 2015). WSOU's presented case at least rises to this misconduct. WSOU's repetitive improper misapplication of facts and misapplied (or non-existent) law render this case exceptional.

#### 1. First, WSOU Forced Wasteful Double Briefings on Multiple Complaints Though an Unsupported Reading of FRCP Rule 12.

From the start, WSOU insisted on wasteful double briefing though its own misreading of Rule 12 of the Federal Rules of Civil Procedure. After ZTE moved to dismiss the initial complaint on October 9, 2020 (Dkt. 26), WSOU simultaneously on November 6, 2020, (1) amended its complaint (Dkt. 36), (2) argued that the initial briefing was mooted by the amendments (Dkt. 35, p. 1), and (3) refused to acknowledge new briefing was necessary to address the non-trivial

---

[3] WSOU noted its overzealous requests for fees in *unrelated* cases, further underscoring WSOU's pervasive abuse of motion practice throughout many cases requesting fees. Dkt. 221, p. 3.

[4] WSOU failed to convince the PTAB to adopt its interpretation of its own claim languages and written descriptions (Dkt. 224, Ex. 32, p. 8)—raising serious concerns about WSOU's post-*Markman* infringement and invalidity theories.

amendments to the complaint (Dkt. 40, pp. 1-2)[5]—effectively arguing that the amended complaint mooted the first round of briefing and *prevented* a second round of briefing. WSOU's unsupported positions forced double and extended briefings (Dkts. 34, 35, 40, 41, 45). *See ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, 2010 WL 3238312, *5-*8 (E.D. Tex. 2010) (finding that losing party's "unnecessary motion practice throughout the case," warranted awarding fees).

WSOU's insistence on double and extended briefings illustrates WSOU's wasteful misconduct. First, WSOU failed to cite supporting case law for its requested extraordinary relief. Dkt. 44, pp. 2-3. Second, WSOU misstated the record before the Court by flip-flopping between arguing that "ZTE Corporation's motion to dismiss or transfer should be denied as moot," and then arguing that "WSOU does not claim ZTE Corporation's motion to transfer is moot." Dkt. 44, p. 4. WSOU's multiplication of litigation should not be condoned. *See Morrison*, 939 F.3d at 637.

### 2. Second, WSOU Presented a Faulty Venue Legal Theory Based on Denied Law.

After six months of expensive *and expansive* venue discovery, WSOU relied on faulty case law and failed to establish venue over ZTE's subsidiaries. WSOU grasped at legal theories for establishing venue over ZTE's subsidiaries and requested that this Court revisit the *Toybox* ruling. *See* Dkt. 89, pp. 2-3; and Dkt. 91, pp. 18-19 (citing *Interactive Toybox, LLC v. Walt Disney Co.*, 1:17-cv-1137-RP, 2018 WL 5284625, at *2 (W.D. Tex. Oct. 24, 2018). This Court recognized the futility of WSOU's poor legal theories and found ZTE's subsidiaries misvenued here (but after months of costly venue discovery based on WSOU's faulty legal theory). Dkts. 104, 112.

---

[5] Courts generally recognize that "an amended pleading supersedes the original for all purposes." *See* Dkt. 40, p. 2 (citing *Nolen v. Lufkin Indus., Inc.*, 466 F. App'x 895, 898 (Fed. Cir. 2012)).

9

### 3.  Third WSOU Presented Contradictory Arguments on Whether the ZTE Subsidiary Parties Were Necessary.

Following this ruling on venue, WSOU attempted avoiding misjoinder of a misvenued entity by reversing itself on the necessity of ZTE's subsidiaries, arguing that ZTE USA "is not an indispensable party" under Rule 19 to this case. *ZTE (USA) Inc. v. WSOU Investments LLC*, 3:21-cv-02128-X, at *6-7 (N.D. Tex. Oct. 28, 2021). But this was in direct contradiction to its <u>earlier and subsequent</u> *arguments*, entangling ZTE USA as a necessary party to its infringement theories—insisting on discovery from ZTE USA. *See* Dkt. 200 (discovery order encouraging plaintiff to "pursue a Rule 45 subpoena to seek discovery from ZTE USA"); and Dkt. 225 (WSOU noting estoppel issues borne from its own inconsistent positions). WSOU cannot have it both ways, and its inconsistent positions resulted in wasteful duplicitous briefing here and in sister courts.

## V.  CONCLUSION – WSOU'S MISCONDUCT SHOULD BE DETERRED

The evidence here establishes that WSOU litigated this case with numerous examples of vexatious misconduct. It knew it had no surviving claims yet proceed with discovery *and* fee requests in this case. This case is exceptional and evidences a clear need to advance considerations of deterrence. ZTE therefore respectfully requests that it be awarded attorney fees in the amount of ▇▇▇▇▇▇, including the fees occurred for the substantive underlying motions addressed above and legal fees incurred in obtaining dismissal with prejudice of WSOU's claims. ZTE further respectfully requests that it be awarded attorney fees in the amount of $20,000 for the pursuit of this motion and additional $25,000 for efforts to collect the total (▇▇▇▇▇▇) awarded sum. *See* Declaration of L. Lavenue, ¶¶6-8 (detailing fees and costs). ZTE further requests permission to conduct discovery related to WSOU's ownership and assets to determine whether any other entities or persons aside from WSOU should be held liable for fees awarded to ZTE.

**PUBLIC VERSION**

DATED: October 17, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/Lionel M. Lavenue*
　　　　　　　　　　　　　　　　　　　　　Lionel M. Lavenue
　　　　　　　　　　　　　　　　　　　　　Virginia Bar No. 49,005
　　　　　　　　　　　　　　　　　　　　　lionel.lavenue@finnegan.com
　　　　　　　　　　　　　　　　　　　　　**FINNEGAN, HENDERSON, FARABOW,**
　　　　　　　　　　　　　　　　　　　　　**GARRETT & DUNNER, LLP**
　　　　　　　　　　　　　　　　　　　　　1875 Explorer Street, Suite 800
　　　　　　　　　　　　　　　　　　　　　Reston, VA 20190
　　　　　　　　　　　　　　　　　　　　　　Phone:　(571) 203-2700
　　　　　　　　　　　　　　　　　　　　　　Fax:　　(202) 408-4400

　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant,
　　　　　　　　　　　　　　　　　　　　　　ZTE Corporation

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Defendant, ZTE, attempted to confer with Plaintiff's counsel in a good faith attempt to resolve this matter by agreement. Counsel for ZTE attempted to contact counsel for Plaintiff and on October 11, and October 14, requesting a meet-and-confer. Counsel for Plaintiff finally responded the morning of October 17, 2022 by email noting that Plaintiff opposed this motion and that it believed an email communication satisfied the meet-and-confer requirement.

/s/Lionel M. Lavenue<br>Lionel M. Lavenue

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system and electronic mail on October 17, 2022.

/s/Lionel M. Lavenue<br>Lionel M. Lavenue